IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWN MCELROY, AMBER MCELROY, HIS WIFE;<br><br>Plaintiffs,<br><br>vs.<br><br>FIRSTENERGY CORP.,<br><br>Defendant, | Civil Action No. 18-1612 |

## **MEMORANDUM OPINION**

Defendant FirstEnergy Corp. ("FirstEnergy") has moved to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, FirstEnergy's Motion to Dismiss will be granted.

### I. Procedural History and Factual Background

Shawn McElroy and his wife Amber McElroy ("Plaintiffs") originally commenced this action in the Court of Common Pleas of Beaver County. It was then removed to this Court by FirstEnergy. (ECF No. 1). After FirstEnergy's Motion to Dismiss the original Complaint was denied and it filed an Answer, Plaintiffs filed their First Amended Complaint. (ECF No. 19). Thereafter, FirstEnergy filed the pending motion to dismiss (ECF No. 22) which has been fully briefed (ECF Nos. 23, 27, 29) and is ripe for disposition.

According to the allegations of the First Amended Complaint, Plaintiff Shawn McElroy was employed as a security guard for Securitas Security Services USA, Inc. (ECF No. 19, ¶ 11). On July 22, 2017, Mr. McElroy was conducting an inspection of the Beaver Valley Nuclear Power Plant in Beaver County in the course of his duties. (*Id.*, ¶¶ 8, 11). The power plant is owned, maintained and controlled by the property owner, FirstEnergy Generation, LLC ("FirstEnergy Generation"). (*Id.*, ¶ 9). Plaintiffs allege that as Mr. McElroy was walking down a stairway at the

power plant, a "deteriorated and rotted wooden stairway step collapsed," causing him to trip and sustain various injuries and damages. (*Id.*, ¶¶ 12, 14–16). According to Plaintiffs, FirstEnergy Nuclear Operating Company ("FirstEnergy Nuclear") had notice that the stairs on the stairway were deteriorated and dangerous. (*Id.*, ¶ 13).

Plaintiffs allege that FirstEnergy, an Ohio corporation, is the parent of a "conglomerate" of subsidiary corporations whose main purpose is to generate, transmit and disperse electrical supply. (*Id.*, ¶ 3). According to the First Amended Complaint, FirstEnergy has created a "corporate web" of subsidiaries in a "fraudulent attempt to create layers upon layers of insulation and protection under the guise of legitimate corporate creation" and that these subsidiaries are "grossly undercapitalized," leading them to "continually file for bankruptcy protection to skirt financial, contractual, and tortious conduct." (*Id.*, ¶¶ 5–7). In support of these allegations, Plaintiffs attach an exhibit which purports to set forth 203 bankruptcy actions involving "FirstEnergy." (*Id.*, ¶ 7 citing Exhibit A). Both FirstEnergy Generation and FirstEnergy Nuclear are alleged to be alter-egos of FirstEnergy. (*Id.*, ¶¶ 9, 13).

In the First Amended Complaint, Plaintiffs set forth three causes of action. Count I sets forth a "Piercing the Corporate Veil/Alter Ego" claim against FirstEnergy by Mr. McElroy in which he contends that FirstEnergy is liable for his injuries because the alter-ego corporations formed by FirstEnergy are shams that were "created for the purpose of defrauding and injuring [him]." (*Id.*, ¶ 18). Plaintiffs allege that FirstEnergy "seeks to skirt liability through its maze of incorporation of grossly undercapitalized and bankrupt entities, while maintaining and operating a nuclear facility in the Commonwealth, and boasting that it draws revenue from those very bankrupt entities . . . ." (*Id.*, ¶ 20) (citing FirstEnergy's 2017 annual report attached as Exhibit B).

2

According to Plaintiffs, FirstEnergy's corporate form is an illusion which should be disregarded and it should be held liable for the conduct of its alter-egos. (*Id.*, ¶¶ 22, 23).

In Count II, Mr. McElroy sets forth a claim of negligence against FirstEnergy in which he alleges, among other things, that FirstEnergy negligently provided and maintained premises that were unsafe and defective. (*Id.*, ¶ 27). Count III states a cause of action for loss of consortium by Mr. McElroy's wife, Amber McElroy. (*Id.*, ¶ 29).

In moving for dismissal, FirstEnergy argues that Plaintiffs' claim of piercing the corporate veil/alter ego fails as a matter of law because under Ohio law, Plaintiffs cannot satisfy the three prongs necessary to pierce the corporate veil. (ECF No. 23 at 4). Further, it contends that because Counts II and III are dependent upon the same theory, they also fail to state a claim because as the First Amended Complaint reflects, FirstEnergy was not the owner or possessor of the premises on which Mr. McElroy was allegedly injured. (*Id.* at 9).

In turn, Plaintiffs maintain that under either Pennsylvania law, which they contend applies to the resolution of FirstEnergy's motion, or alternatively, Ohio law, the First Amended Complaint sufficiently pleads a claim for piercing the corporate veil. (ECF No. 27).

## II. Discussion

### A. Standard of Review

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct

3

alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. A court may consider the complaint, exhibits attached to the complaint, matters of public record and "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### B. Piercing the Corporate Veil/Alter Ego Claim

Plaintiffs seek to pierce the corporate veil in order to hold FirstEnergy liable for the purported conduct of its subsidiary, FirstEnergy Generation, which Plaintiffs allege was the entity which owned, maintained, possessed and controlled the premises on which Mr. McElroy was allegedly injured. The parties agree that in a diversity case, the Court must apply the choice of law rules of the forum state. *See Klaxon v. Stenfor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 497 (1941). Therefore, it is uncontroverted that Pennsylvania's choice of law rules apply.

"When Pennsylvania courts consider issues of corporate law, the first step is usually an application of the Internal Affairs Doctrine, codified at 15 Pa. Cons. Stat. § 4145." *Macready v. TCI Trans Commodities, A.G.*, No. CIV. A. 00-4434, 2011 WL 4835829, at *3 (E.D. Pa. Oct. 12, 2011) (citing *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 (3d Cir.2005); *Guinan v. A.I.*

*DuPont Hosp. for Children*, 597 F. Supp. 2d 485 (E.D.Pa.2009)). Section 4145 provides in relevant part that:

> The courts of this Commonwealth shall not dismiss or stay any action or proceeding brought by a shareholder or representative of a foreign domiciliary corporation, as such, against the corporation or any one or more of the shareholders or representatives thereof, as such, on the ground that the corporation is a foreign corporation for profit or that the cause of action relates to the internal affairs thereof, but every such action shall proceed with like effect as if the corporation were a domestic corporation. . . . **[T]he court having jurisdiction of the action or proceeding shall apply the law of the jurisdiction under which the foreign domiciliary corporation was incorporated.**

15 Pa. Cons. Stat. § 4145(a) (emphasis supplied).

Here, FirstEnergy urges the Court to apply § 4145 and evaluate Plaintiffs' piercing claim pursuant to the law of Ohio, the state of incorporation of First Energy and its subsidiaries. Plaintiffs, on the other hand, contend that § 4145 is inapplicable because their claims do not implicate the internal affairs doctrine.[1] Thus, they argue, Pennsylvania law applies.

The Court agrees that the internal affairs doctrine, as codified at § 4145, does not apply to this controversy. As noted by the district court in *Franklin v. SKF USA Inc.*, 126 F. Supp. 2d 911 (E.D. Pa. 2000), § 4145 relates to a particular set of cases, that is, actions that were brought by a shareholder or representative of a foreign corporation against the corporation. Because Plaintiffs

---

[1] "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (citing Restatement (Second) of Conflict of Laws § 302, Comment *b*, pp. 307–308 (Am. Law Inst. 1971)). It is well established that, "[a]s a general matter, the law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation . . . . Different conflicts principles, however, apply where the rights of third parties *external* to the corporation are at issue." *Curiale v. Tiber Holding Corp.*, No. 95-5284, 1997 WL 597944, at *11 (E.D. Pa. Sept. 18, 1997) (quoting *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd.*, No. 86 CIV. 1313 (RLC), 1988 WL 75262, at *4 (S.D.N.Y. July 13, 1988)).

5

are not shareholders or representatives of any of the FirstEnergy entities at issue, § 4145 is not applicable here.

Having concluded that § 4145 is inapplicable, in most cases the Court would proceed under Pennsylvania's general choice of law rules to determine "which state has the most significant relationship to the occurrence and the parties." *Melmark, Inc. v. Schutt by & Through Schutt*, 206 A.3d 1096, 1107 (Pa. 2019). However, the Court need not undertake that inquiry here because it is well established that, "[u]nder Pennsylvania law, the veil-piercing analysis is governed by the law of the state of incorporation." *Milton Roy, LLC v. Ne. Pump & Instrument, Inc.*, No. CV 17-5830, 2019 WL 2469795, at *5 n.9 (E.D. Pa. June 13, 2019) (citing decisions). *See also Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203 (Pa. Cmmw.Ct. 2017). Accordingly, the Court concludes that Ohio law is applicable.[2]

Under Ohio law, shareholders, officers and directors generally are not liable for the debts of a corporation. *Belverdere Condominium Unit Owners' Assn. v R.E. Roark Cos., Inc.*, 617 N.E.2d 1075 (1993). However, shareholders are not "absolutely immune" from liability for the acts of their corporations. *Dombroski v. WellPoint*, 895 N.E.2d 538, 543 (Ohio 2008). Ohio courts apply a three-prong test in order to determine if piercing the corporate veil is justified: (1) was there

---

[2] The Court's conclusion is supported by § 307 of the Restatement (Second) of Conflict of Laws which appears to recommend application of the law of the state of incorporation in an action to pierce the corporate veil. *See* Restatement (Second) of Conflict of Laws § 307 (Am. Law Inst. 1971) ("The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts."); Gregory Scott Crespi, Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles, 64 N.Y.U. Ann. Surv. Am. L. 85, 109–118 (2008) (conducting a comprehensive textual analysis and concluding that § 307 establishes, at most, a rebuttable presumption that the law of the state of incorporation should be applied to piercing controversies and that a general choice-of-law analysis should be conducted before this determination is made).

complete control over the subsidiary; (2) was control exercised in a manner as to commit fraud, an illegal act or similarly unlawful act; and (3) did plaintiff sustain an injury from such control. *Id.*

It is undisputed that all the entities implicated in the First Amended Complaint, i.e., FirstEnergy, FirstEnergy Generation, and FirstEnergy Nuclear, are incorporated in Ohio. As alleged in the First Amended Complaint, Plaintiffs contend that FirstEnergy has created a corporate web in a fraudulent effort to create layers of insulation from liability. (ECF No. 19, ¶ 5). They further contend that FirstEnergy has fraudulently and systematically exercised complete control over its subsidiaries, which are "grossly undercapitalized," and that the corporate form is an illusion which is a means to "insulate the profits and greed of its board to the detriment of those injured at the operation of the sham subsidiary corporations." (*Id.*, ¶¶ 18, 20, 23). Plaintiffs do not contend that the purported fraud was committed solely to harm them, but rather, that FirstEnergy is generally engaged in fraud with respect to all of its subsidiaries.

With respect to the first prong of the test, while it is an extremely close call, for purposes of a Rule 12(b)(6) motion, the Plaintiffs have adequately pleaded that FirstEnergy exercised complete control over its subsidiaries.[3]

In order to pierce the corporate veil to bring a lawsuit against FirstEnergy for the actions of its subsidiary, FirstEnergy Generation, Plaintiffs must also meet the second prong of the test under Ohio law. Thus, Plaintiffs must allege that the exercise of control was in a manner as to commit fraud, an illegal act or similarly unlawful act. In *Dombroski*, the Ohio Supreme Court

---

[3] The Court notes that FirstEnergy has made a compelling argument that some of the facts upon which Plaintiffs attempt to rely are refuted by the very exhibits attached to the First Amended Complaint. At the same time, the allegations of Paragraphs 5, 6, 18, 19, 21–23 set forth allegations that could, when viewed in the light most favorable to Plaintiffs, support a claim that FirstEnergy exercised complete control over its subsidiaries. The submission of evidence would be necessary to resolve this issue; however, as set forth herein, this is not necessary as Plaintiffs cannot satisfy the second prong of the test for piercing the corporate veil.

7

expanded the second prong, which was limited to cases of fraud or illegal acts, "to allow for piercing in the event that egregious wrongs are committed by shareholders." 895 N.E.2d at 545. The *Dombroski* Court noted:

> Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct . . . . However, even under this expanded version of the second prong . . . [Plaintiff's] claim fails. Insurer bad faith is a straightforward tort, a basic example of unjust conduct; it does not represent the type of exceptional wrong that piercing is designed to remedy.

*Id.*

Plaintiffs allege causes of action of negligence and loss of consortium. Under Ohio law, these claims represent "straightforward torts," not the type of "exceptional wrong[s]" that would justify piercing the corporate veil. *Id.* Therefore, Plaintiffs fail to meet a requisite prong to proceed under an alter ego theory.

Given this finding, it is unnecessary to review the third prong of the test. While the First Amended Complaint sufficiently alleges harm to both Plaintiffs, it fails to establish that FirstEnergy is responsible for that harm. Given the failure to pierce the corporate veil, Plaintiffs have not pleaded any independent basis of liability on the part of FirstEnergy. The First Amended Complaint alleges that FirstEnergy Generation owns, maintains, possesses and controls the property on which Mr. McElroy was injured and that FirstEnergy Nuclear had notice of the unsafe condition that allegedly caused his injuries. There are no allegations that their parent, FirstEnergy, owns possesses, maintains or controls the premises or had knowledge of any dangerous conditions on the property.

As such, the First Amended Complaint fails to state a claim against FirstEnergy and FirstEnergy's motion to dismiss will be granted.

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge

Dated: November 13, 2019.